The parties entered the following which were filed with the North Carolina Industrial Commission on June 8, 1997, as:
 STIPULATIONS
1. All parties are properly before the Commission, and that the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. An employer-employee relationship existed between plaintiff and defendant High Point Sprinkler from August, 1985 through and including November 16, 1992, and specifically including April 8, 1991 and October 19, 1992.
5. The defendant High Point Sprinkler was insured by Aetna Insurance Company on April 8, 1991 and on October 19, 1992. Defendant — carrier Aetna was the carrier at risk for both accidents and is the legally responsible party liable for any temporary total disability benefits and medical compensation to which plaintiff is entitled.
6. Plaintiff last worked for defendant High Point Sprinkler on Thursday, November 16, 1992.
***********
In accordance with its initial Opinion and Award, the Opinion and Award of Deputy Commission Holmes and the January 12, 1998 Order of the Full Commission, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was 32 years old and lived in Lexington, North Carolina, at the time of the original hearing before Deputy Commissioner William Haigh, is a high school graduate who spent a month and three days in the Air Force before being honorably discharged. Plaintiff worked several odd jobs prior to working for High Point Sprinkler. He worked for Burger King, installed air-conditioning equipment, and also worked at a convenience store.
2. Plaintiff began working for defendant-employer in 1985 as a pipe fitter apprentice. Defendant-employer was engaged in the business of installing fire protection equipment including fire hydrants, underground pipes, and sprinkler systems in buildings. Plaintiff's job with defendant-employer included delivering materials to job sites, unloading pipes and other materials and installing fire protection equipment. Most of plaintiff's duties were performed at ceiling level (at heights ranging eight feet and higher) using ladders, scaffolding and motorized lift systems.
3. On April 8, 1991, plaintiff was working for defendant-employer on location at USAir in Winston-Salem, North Carolina. His crew was installing a sprinkler system throughout the building at a height of approximately 30 feet. Plaintiff was on the ground moving scaffolding when a 15 + inch pipe rolled off the scaffold, fell 18 to 23 feet and struck him on the back of his head, neck, and shoulders. This constituted a compensable injury by accident which was admitted by defendants through a Form 21 filed with and approved by the Industrial Commission.
4. Plaintiff was seen on the day of his accident at the Emergency Room of Baptist Hospital with a history of being struck on the head by a metal pipe that fell about 20 feet. After the examination, plaintiff was released and told to take one day off work. After taking one day off, plaintiff returned to his normal duties, but continued to experience constant headaches.
5. Approximately two months after his April 8, 1991 injury by accident, plaintiff experienced a seizure and two blackouts. On May 19, 1991, plaintiff informed his sister that he wasn't feeling well, and shortly thereafter plaintiff fell to the ground, with his complexion turning blue and gray. Plaintiff was taken to North Carolina Baptist Hospital Emergency Room where he was diagnosed with a post-concussive syndrome.
6. Plaintiff continued to experience constant headaches and ringing in his ears during the summer of 1991, and began treatment with Dr. Thompson at the neurology clinic at North Carolina Baptist Hospital. He was also referred, by Dr. Thompson, to the Pain Control Center.
7. On May 21, 1991, Dr. Thompson performed a CT scan on plaintiff. Afterwards he scheduled plaintiff to undergo a sleep deprived EEG which took place on June 7, 1991.
Because the EEG was in normal limits, he was treated with medication and returned to work on June 27, 1991. Plaintiff took vacation time from June 27, 1991 to July 8, 1991, and then returned to his normal duties for defendant-employer. In October, 1991, plaintiff was again seen by Dr. Thompson for headaches, and pain in the neck, right arm and shoulder.
8. In October, 1991, plaintiff began working for defendant-employer in Jamaica. Plaintiff worked three weeks, took off a week, and returned to work another three weeks. He came home in December, 1991, but returned to Jamaica again in January, 1992. During this time, he continued to experience headaches.
9. During the summer of 1992, while still working for defendant-employer, plaintiff was assigned to work construction at the Winston-Salem City Jail. He felt uneasy about his work and climbing various heights. Two of his supervisors, Brett Shaw and Terry Collins, voiced concerns regarding his behavior, reporting that plaintiff did not seem to be himself and that something was wrong with him.
10. On October 19, 1992, at the Winston-Salem City Jail, plaintiff was working in a holding cell attempting to drill a hole in the corner of the wall. As he was applying pressure to the electric hammer drill, the ladder began to leave its original position and he fell approximately eight feet, hitting his hands and head on metal brackets on the wall, destroying the safety glasses he was wearing. Plaintiff was taken to the hospital by his foreman, Brett Shaw. Plaintiff was treated for a contusion to the forehead and bruised wrist, and released.
11. This incident on October 19, 1992 constituted an injury by accident arising out of and in the course of his employment with defendant-employer.
12. Defendants were on actual notice of this accident, defendant-employer's foreman took plaintiff to the emergency room and defendant-employer filed a Form 19 in connection with this accident. Defendants by way of interrogatories asked plaintiff if he ever filed a claim for damages or workers' compensation other than for his April 8, 1991 injury. In response, plaintiff described falling from a ladder and injuring his head and wrist while working at the Forsyth County Jail for High Point Sprinkler. These interrogatories and answers were submitted to defendants on July 14, 1993. On December 1, 1993, defendants and plaintiff stipulated to the answers to interrogatories being submitted in writing to the Industrial Commission as Plaintiff's Exhibit 1. On December 1, 1993, in front of the Deputy Commissioner, plaintiff was examined and cross examined regarding his October 19, 1992 injury by accident. Defendants' counsel specifically examined plaintiff regarding time plaintiff missed from work as a result of his October 19, 1992 workplace accident. Defendants were not prejudiced in any way in their investigation of the incident on October, 1992.
13. As the result of the incident on October 19, 1992, plaintiff has been unable to return to work for defendant-employer since November 16, 1992.
14. Thereafter, plaintiff requested the carrier to reinstate his temporary total disability benefits. The carrier refused, and an I.C. Form 33 was filed, leading to the hearing before Deputy Commissioner Haigh.
15. Following the October 19, 1992 injury, plaintiff began seeing psychiatrist Dr. Jerry Noble for assistance in dealing with his mounting depression. He was subsequently referred to Dr. Peter Rosenquist, in the Department of Neuropsychiatry at North Carolina Baptist Hospital. Plaintiff has been examined by Dr. Rosenquist approximately six times. He continues treatment with Dr. Noble.
16. As the result of the October 19, 1992 injury by accident, plaintiff's activities have been limited. He has not been employed. However, he attempts to work around his land and drives on occasion. Plaintiff had neighbors assist him when he was performing activities such as planting trees, hanging lattice work on his deck, mowing his yard, and building two doghouses.
17. During the spring of 1993, plaintiff spent time with his father-in-law, Gilbert R. Thompson, at T T Radiator, a business then owned by Mr. Thompson. Plaintiff also assisted his father-in-law in the radiator shop in 1984 or 1985, when his father-in-law was unable to work. Plaintiff performed only menial tasks, and was permitted to come and go from the shop at his own discretion. Plaintiff was not an employee of T T Radiator.
18. Defendants hired a private investigator to observe plaintiff's activities while at T T Radiator Shop. The investigator testified that he observed, and videotaped, plaintiff carrying two-by-fours, physically moving equipment and working on radiators. Plaintiff's treating psychiatrist, Dr. Rosenquist, reviewed the tapes and found that plaintiff was able to perform only simple and repetitive tasks and appeared to be following these instructions.
19. Based partially on the videotapes made by the private investigator, Deputy Commissioner Haigh determined that plaintiff was capable of work and was therefore not credible in his testimony about his mental impairment. However, the Full Commission has reviewed the videotapes, as well as the deposition testimony of Gilbert Thompson, the owner of T T Radiator Shop, where plaintiff was alleged to have worked. Additionally, the Full Commission has reviewed the medical records which were introduced into evidence at the hearing. The Full Commission took special note of the neuropsychological report on plaintiff which noted a significant compromise in recall of complex materials, both verbal and nonverbal in nature. Plaintiff scored in the lowest one percentile on some of the test. The neuropsychological report indicated that plaintiff reported having problems communicating with others, impaired concentration and difficulty recalling recent events. The neuropsychological report found that plaintiff was basically truthful and accurate in his responses. The report concluded that the combination of cognitive and psychological symptoms were handicapping. In this case, in reviewing the medical records, the depositions of Gilbert Thompson and psychiatrist Peter Rosenquist, M.D., the Full Commission is in as good a position as the Deputy Commissioner in judging credibility based on videotape, plaintiff's cognitive impairment and work performed at T T Radiator Shop. The Full Commission finds that the neuropsychological testing and the testimony of plaintiff's treating psychiatrist provide credible evidence of plaintiff's cognitive impairment and incapacity to work. The testimony of Gilbert Thompson provides additional support to this medical evidence.
20. Plaintiff has been examined by Dr. Rosenquist because of his cognitive impairment growing out of the April 8, 1991 injury by accident and the October 19, 1992 injury by accident. Dr. Rosenquist determined that as the result of plaintiff's condition he was incapable of returning to work, and the Full Commission finds this to be true.
21. Plaintiff's inability to return to work was caused by his April 8, 1991 injury by accident, and was exacerbated by the October 19, 1992 injury by accident.
22. As the result of the April 8, 1991 injury by accident and the October 19, 1992 injury by accident, plaintiff has been incapable of earning wages in his former position with defendant-employer or in any other employment from November 16, 1992 through the present.
23. Aetna Life Casualty Insurance Company was the carrier on the risk for the April 8, 1991 injury by accident and the October 19, 1992 injury by accident.
24. Plaintiff's average weekly wage on April 8, 1991 was 414.00, yielding a compensation rate of $276.00.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage on April 8, 1991, was $414.00, yielding a compensation rate of $276.00. N.C. Gen. Stat. § 97-22(5).
2. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on April 8, 1991. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on October 19, 1992 which exacerbated his condition. N.C. Gen. Stat. § 97-2(6).
3. Defendants were on actual notice of plaintiff's October 19, 1992 injury by accident arising out of and in the course of his employment. In the unusual circumstances of this case, defendants' actual notice of plaintiff's October 19, 1992 injury, coupled with: (a) defendants receipt of plaintiff's answers to interrogatories referring to his October 19, 1992 injury in response to their question regarding whether he had filed additional workers' compensation claims; (b) the submission of those written answers to the Industrial Commission before a Deputy Commissioner; and (c) the taking of plaintiff's testimony regarding his October 19, 1992 injury before a Deputy Commissioner on December 1, 1993, constituted the timely filing of a claim for the October 19, 1992 injury. N.C. Gen. Stat. §97-24.
4. As the result of plaintiff's injuries by accident, he is entitled to temporary total disability compensation at the rate of $276.00 per week from November 16, 1992 through the present and continuing until further order from the Commission. N.C. Gen. Stat. § 97-29.
5. As the result of plaintiff's injuries by accident, he is entitled to payment for all reasonable medical expenses incurred or to be incurred. N.C. Gen. Stat. § 97-25.
6. Counsel for plaintiff is entitled to a reasonable attorney's fee of the compensation awarded herein.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants and specifically the defendant-employer's carrier, Aetna Insurance Company, shall pay plaintiff temporary total disability compensation at the rate of $276.00 per week from November 16, 1992 through the present and continuing until further Order from the Commission. Amounts of temporary total disability compensation which have accrued shall be paid plaintiff in a lump sum, subject to an attorney fee provided below.
2. Defendants shall pay all medical expenses incurred or to be incurred, as a result of plaintiff's compensable accidents of April 8, 1991 and October 19, 1992 for so long as such treatment may reasonably be required to effect a cure, give relief or tends to lessen plaintiff's disability.
3. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due under Paragraph 1 of this AWARD is approved. Of the accrued amount, paid in a lump sum to plaintiff, defendants shall deduct twenty-five percent and forward that amount directly to plaintiff's counsel. For the balance of the attorney fee, defendants shall forward every fourth compensation check directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This 17th day of May 1999.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
DISSENTING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
Note: This Opinion and Award was signed by all three members of the panel prior to the retirement of J. Howard Bunn, Jr.